IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BENIGNO CONTRERAS BORDALLO, et al.,

Plaintiffs

v.                                                          CIVIL 96-1874 (DRD)

BANCO BILBAO VIZCAYA DE PUERTO RICO,
et al.,

Defendants

## MAGISTRATE'S REPORT AND RECOMMENDATION

Plaintiff Benigno Contreras Bordallo ("Contreras") and his wife, Alba Santaella Bonano ("Santaella"), filed a complaint charging defendants Banco Bilbao Vizcaya ("BBV") and Juan A. Net ("Net") with illegal national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000-e et seq. In addition plaintiffs request this court to exercise supplemental jurisdiction over the claims arising under the Commonwealth's Act No. 100 of June 30, 1959, as amended (P.R. Laws Ann. tit. 29, § 146 et seq.); Act No. 80 of May 30, 1976, as amended (P.R. Laws Ann. tit. 29, § 186a et seq.); and Article 1802 of Puerto Rico's Civil Code (P.R. Laws Ann. tit. 31 § 5141) for an alleged breach of contract.

## BACKGROUND

Contreras' employment history with the Mayagüez Commercial Bank began on December 28, 1968, as vice-president and general manager. During the 1970's, Banco Vizcaya acquired the Mayagüez Commercial Bank as a result of Banco Vizcaya's purchase of Banco Occidental. Despite the aforementioned, Contreras retained his then current position of executive vice-president and was also a member of the Board of Directors. In 1988, Banco Bilbao merged with Banco Vizcaya. The surviving entity, Banco Bilbao Vizcaya ("BBV"), is one of the defendants in the present suit. Contreras remained as executive vice-president of BBV. His duties included supervising the Human Resources Department and the Centralized Electronic Data Processing Department.

During 1993, plaintiff Contreras' personal financial situation became precarious. On June 11, 1993, the Royal Bank of Puerto Rico merged with BBV-PR. As part of the due diligence carried out by the BBV, the bank acknowledged a loan for $25,000 that Contreras had with the Royal Bank since 1991. Defendants allege that at the time of the merger said loan was in delinquency. Defendants further state that Contreras agreed to correct the situation after discussing the matter with Net, president of BBV-PR. (See Docket No. 55, Exhibit 3, at 70-72.) Plaintiff, on the other hand, contends that his debt with the Royal Bank was a demand loan and, as such, had no fixed due date. Contreras alleges that the interests on this loan were being paid on time and that the loan was not delinquent. (See

CIVIL 96-1874 (DRD)                3

Docket No. 56, Exhibit A, ¶ 44.) In 1993, as well, four financial institutions filed suits for collection of money against Contreras and his wife.[1] Contreras admits the existence of these suits, but contends that they were all dismissed while he was still working for BBV.

Later in 1993, BBV became aware of the aforementioned civil actions against Contreras through a publication named "Boletín de Puerto Rico." In January 1994, codefendant Net met with Contreras to discuss his perilous situation. Not surprisingly, there are differing versions of what transpired in said meeting. Defendants contend that at the meeting Net communicated to Contreras his concern over plaintiff's financial situation. Net allegedly told Contreras that his problems had a negative effect on the image of the Bank given his status as a high ranking officer. Net asked Contreras to resolve his financial troubles and reminded him of their previous conversation in relation to the delinquent Royal Bank loan. (See Docket No. 55, Exhibit 3, at 69-72.) Plaintiff, on the other hand, alleges that Net never mentioned the Royal Bank loan during this meeting.

---

[1] On February 25, 1993, Banco Financiero de Puerto Rico filed civil case CD93-00229 against Contreras and his wife to collect the amount of $26,211.21 owed in connection with Note 33-01-641205. On August 16, 1993, Banco Santander filed civil case 93-00948 against Contreras in connection with Note 6851 for the principal sum of $32,805.19 and Note 1006 for the principal sum of $12,000. On August 31, 1993, the First Federal Savings Bank filed civil case 93-01032 against Contreras and his wife for the amount of $38,000 in connection with loan 1700809-3. On October 4, 1993, Western Bank Federal Savings brought suit against Contreras in connection with loan 702-1644 for the principal sum of $26,857.41, and loan 702-2077 for the principal sum of $25,000. (See Docket No. 55, Exhibits 5, 6, 7 and 8.)

CIVIL 96-1874 (DRD)  4

Contreras further asserts that Net offered him $300,000 and a consulting position in exchange for his resignation; an offer he declined. Plaintiff contends that Net offered him help restructuring his debt and presenting it to the Board of Directors. In addition, Contreras asked Net to authorize the liquidation of his accrued vacation time in order to alleviate his financial problems. (See Docket No. 56, Exhibit A, ¶ 13 and 20.)

Another meeting took place on February 28, 1994 between BBV's General Auditor Salvador Milán ("Milán") and Contreras. Defendants contend that Milán discussed various alternatives to regulate Contreras' finances, and suggested that he either sell or rent some of his properties in order to refinance his debt. (See Docket No. 56, Exhibit 15.) Contreras denies that Milán suggested in any way how to regulate his financial situation. Contreras contends that Milán merely obtained information from him in order to prepare an audit report about his financial condition. (See Docket 56, Exhibit A, ¶ 46.) Milán prepared several reports regarding the status of Contreras' financial situation. (See Docket 56, Exhibits I, J and K.)[2]

---

[2] There is evidence in the record of a study conducted by Nelson Rodríguez-López in regard to the possible violations to banking laws and regulations that Contreras may have incurred due to his critical financial situation. The parties disagree as to the admissibility of this report. I have not considered the information contained in the report in my analysis given that the report is dated April 7, 1994. The report was submitted after BBV demoted Contreras in March of 1994, and thus had no bearing on the Bank's decision.

AO 72
(Rev 8/82)

CIVIL 96-1874 (DRD)                 5

In March 1994, Net informed Contreras that given the seriousness of his financial situation he would be demoted. BBV officials allege that they informed Contreras of their right to implement further disciplinary action, including dismissal, if he did not resolve his financial perils. (See Docket No. 55, Exhibit 3.) Defendants assert that plaintiff's salary was not reduced.[3] Contreras denies that Net informed him of the additional disciplinary measures, in particular, the possibility of dismissal. On March 24, 1994, Net informed Alfonso Herrero Yacoby, general director of BBV, S.A./Madrid, through a memorandum, of the disciplinary measures taken against Contreras, and the decision to reassign him to another position in order to allow him to reorganize his personal finances. Contreras was then appointed "Supervisor of the Branches Improvements." His duties included the development of the new BBV branches in Puerto Rico and the handling and control of expenses. Contreras' former position as senior vice-president was not occupied by another employee until July 1994 when Felipe Cabezas, a Spanish citizen, was appointed to the post.

In 1995, BBV once again became aware through the "Boletín de Puerto Rico" of another civil action for collection of money against Contreras. This time Banco Santander

---

[3] Mr. Contreras alleges that his salary was indeed reduced since he was not granted a productivity bonus to which he was entitled to as a result of the Royal Bank transaction. Furthermore, he asserts that as a result of the demotion his per diem was eliminated and he was not reimbursed for traveling expenses between San Juan and Mayagüez. (See Docket No. 56, Exhibit A, ¶ 19; Exhibit B, at 81-82.)

CIVIL 96-1874 (DRD)                6

filed civil case CD95-111 in which it alleged that plaintiffs did not honor their prior commitment to pay their loans as per a post judgment agreement signed on March 1, 1994. On March 27, 1995, Contreras was discharged. The reason given for the discharge was his constant failure to comply with his financial obligations in violation of Rules 61 and 62 of BBV's Conduct Manual[4]. Defendants allege that Contreras' last position with the Bank was not occupied by any other employee, and that his duties were assigned to two BBV employees: Felipe Cabezas and Jesús Feliciano Escudero, who is Puerto Rican. Contreras asserts that Felipe Cabezas took over his responsibilities.

Several weeks after Contreras' termination BBV discussed with plaintiff the possibility of contracting his services as a consultant. Defendants assert that the negotiations never materialized into an agreement, either oral or written. Conversely, Contreras alleges that he entered into a contract with BBV which the bank later breached.

---

[4] BBV's Employee Manual requires that its employees comply with all their financial obligations. (See Docket No. 55, Exhibit No. 4, at 8.) Rule 61 reads: "Timely comply with financial obligations contracted with the Bank, other financial institutions or banks; and arrears in loans or debts. Avoid salary attachments." Rule 62 provides that "[t]he overdraft in checking accounts is strictly prohibited in accordance with the overdraft policy established by the Bank. The violation of this rule could be reason for dismissal. As a banking institution, BBV-PR, has the legitimate interest that their employees and officials handle their personal finances responsibly. The clients of the Bank have the right to expect that their funds and assets are administered by persons who are competent handling their own finances. Consequently, it is the policy of the Bank to separate from employment those employees or officials who show negligence, inability or irresponsibility in the handling of their personal finances."

CIVIL 96-1874 (DRD)                             7

BBV and Net filed a motion for summary judgment (Docket No. 54) on the ground that Contreras failed to state a *prima facie* case of national origin discrimination as required under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Specifically, defendants contend that Contreras' discharge on March 27, 1995 was due to his repeated failure to comply with his personal financial obligations and his recurring violation of Rules 61 and 62 of BBV's Conduct Manual. In the alternative, BBV alleges that Contreras has failed to establish that BBV's legitimate and non-discriminatory reason for terminating him was, in reality, a pretext for national origin discrimination. Contreras filed a motion in opposition to defendant's motion (Docket No. 56) alleging that there are discrepancies relating to genuine issues of material fact that impede the granting of summary judgment. The defendants filed a reply motion (Docket No. 57) which in turn was followed by plaintiffs' sur reply. (Docket No. 59.)

SUMMARY JUDGMENT STANDARD

The standard for summary judgment is well settled. "[A] court may grant summary judgment if the *nisi prius* roll discloses no genuine issue of material fact and if, viewing the entire record in the light most flattering to the nonmovant, the proponent demonstrates its entitlement to judgment as a matter of law." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 748 (1st Cir. 1996)); see also Fed. R. Civ. P. 56(c). Where, as in this case, the defendants

CIVIL 96-1874 (DRD)                         8

have invoked Rule 56 alleging lack of supporting evidence, the plaintiffs "bear the burden of setting forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Mulero-Rodríguez v. Ponte Inc., 98 F.3d 670, 673 (1st Cir. 1996).

"Not every discrepancy in the proof is enough to forestall a properly supported motion for summary judgment; the disagreement must relate to some genuine issue of material fact." Mesnick v. General Elec. Co., 950 F.2d 816, 821 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992) (citing Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 247-48 (1986); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). A genuine issue exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial. Morris v. Government Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994). A fact is material if it might affect the outcome of the suit under the governing law. Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994); see Morris v. Government Dev. Bank of Puerto Rico, 27 F.3d at 748.

On issues where the nonmoving party bears the ultimate burden of proof at trial, a properly documented motion for summary judgment will not be defeated if the nonmovant relies on evidence that is "merely colorable" or "not significantly probative." Pagano v. Frank, 983 F.2d 343, 347 (1st Cir 1993) (citing Anderson v. Liberty Lobby, Inc., 477 U.S.

CIVIL 96-1874 (DRD)                                9

at 249-50). "Proof based on arrant speculation, optimistic surmise or farfetched inference will not suffice." Kelly v. United States, 924 F.2d 355, 357 (1st Cir. 1991) (citation omitted). Summary judgment can be entered "[e]ven in cases where elusive concepts such as motive or intent are at issue . . . if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d at 95 (citations omitted).

## TITLE VII CLAIM

### I. The Law

Title VII renders it unlawful for an employer to "discharge any individual . . . because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). When plaintiffs are unable to offer direct proof of their employers' discriminatory animus–as is usually the case and is so here–a Title VII claim must be analyzed under the three-stage burden-shifting framework of McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973). See Rodríguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 19 (1st Cir. 1999); Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d at 96. Under this framework the plaintiff has the initial burden of establishing a *prima facie* case of unlawful discrimination. This includes a showing that: (1) plaintiff is a member of a protected class; (2) plaintiff's employer took an adverse employment action against him or her; (3) plaintiff was qualified for the employment he or she held; and (4) plaintiff's

position remained open or was filled by a person whose qualifications were similar to his or hers. See Rodríguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d at 19 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993)); see also Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d at 95. The burden of making out a *prima facie* case is "not onerous." Mesnick v. General Elec. Co., 950 F.2d at 823 (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

Once the plaintiff establishes his/her *prima facie* case, the burden shifts to the defendant, to produce a valid and nondiscriminatory reason for the plaintiff's termination. See Thomas v. Eastman Kodak Co., 183 F.3d 38, 56 (1st Cir. 1999) (citing Mulero-Rodríguez v. Ponte, Inc., 98 F.3d at 673). If the defendant is successful, the burden shifts back to the plaintiff to show that defendant's reason is merely pretextual and that the defendant intentionally discriminated against him or her. St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 507. See, e.g., Mulero-Rodríguez v. Ponte Inc., 98 F.3d at 673; Ayala-Gerena v. Bristol Meyers-Squibb Co., 95 F.3d at 95. "In the context of a summary judgment proceeding, once the employer articulates a legitimate, nondiscriminatory basis for its adverse employment decision, the plaintiff must offer direct or indirect evidence sufficient to show that the employer's decision to discharge him or her was wrongfully based on ... national origin." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d at 95 (citing Pagés-Cahué v. Iberia Líneas Aéreas de España, 82 F.3d 533, 536-37 (1st Cir. 1996).

## II. Analysis

### *The Prima Facie Case*

Under the McDonnell framework, Contreras has the initial burden of establishing a *prima facie* case of unlawful discrimination. It is clear that Contreras, a Puerto Rican, is a member of a protected class. Secondly, BBV's action of terminating Contreras in March of 1995 constitutes an adverse employment action.

The third and fourth elements of plaintiff's *prima facie* case require a bit more discussion. BBV argues that although Contreras is technically qualified for his job, he nonetheless failed to meet the Bank's legitimate expectation of keeping his personal finances in order and complying with Rules 61 and 62 of BBV's Conduct Manual. The First Circuit has stated that "[t]he issue of job qualifications must be viewed in an objectively reasonable way. Particularly in a discharge case–where an employee has been doing the job satisfactorily for a substantial period of time–the proponent's burden is not great. Conversely, an employer's post hoc rationalizations cannot be allowed to overshadow the reality of the events." Cumpiano v. Banco Santander Puerto Rico, 902 F.2d 148, 154 (1st Cir. 1990).

There is ample evidence in the record to support a finding that Contreras was indeed qualified to hold his position of "Supervisor of the Branches Improvements." Contreras was an employee of the Bank for 27 years. He was considered a first-rate employee, not

CIVIL 96-1874 (DRD)                    12

only during his tenure, but also after his discharge. The record shows that defendant Net opined that Contreras' job performance was optimum and that through his career with the Bank he had covered all aspects of the banking business with an excellent performance. (See Docket 56, Exhibit B, at 66, line 9; at 68, lines 12-13.) Furthermore, Contreras' last performance evaluation shows that his performance was excellent in a period of crisis. (See Docket No. 56, Exhibit P.) Further evidence of Contreras' ability is the fact that he was regularly left in charge of the operations of the Bank as acting president while Net was away from Puerto Rico. ( Docket No. 56, Exhibit B, at 67.) Finally, after his discharge, BBV attempted to hire Contreras as an independent contractor. (Docket No.56, Exhibit L.) Taking the full panoply of circumstance into account in the light most favorable to Contreras, I find that plaintiff Contreras' burden of establishing his job qualifications was fulfilled.

In order to establish the fourth element of his *prima facie* case, Contreras needs to establish that his position remained open or was filled by a person whose qualifications were similar to his. BBV contends that Contreras' position was not occupied by any other employee of the Bank, and that his duties were assigned to two employees: Felipe Cabezas and Jesús Feliciano Escudero, who is Puerto Rican. (Docket 54, Exhibit 18, at 22-23.) Contreras, on the other hand, alleges that he was substituted by Cabezas.

CIVIL 96-1874 (DRD) 13

"The prima facie case method conceived in McDonnell Douglas . . . was 'never intended to be rigid, mechanized, or ritualistic.'" Cumpiano v. Banco Santander Puerto Rico, 902 F.2d at 154. Plaintiffs have been found to satisfy the fourth prong of their *prima facie* case simply by showing that the employer had a continued need for "someone to perform the same work after [the plaintiff] left." Id. at 155 (citing Lipsett v. University of Puerto Rico, 864 F.2d 881, 899 (1st Cir. 1998). The fact that BBV approached Contreras to offer him a position as an independent contractor to fulfill the same responsibilities that he had prior to his dismissal is enough proof to satisfy the fourth element of his *prima facie* case. Furthermore, Contreras produced evidence in support of his allegation that his job functions were absorbed by Cabezas. See, e.g., Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 334 (1st Cir. 1997). I thus find that Contreras has met his initial burden of establishing a prima facie case.

*BBV's Reason for Dismissal*

"Once a plaintiff establishes a prima facie case, a presumption arises that the employer unlawfully discriminated against the plaintiff. . . . This presumption 'places upon the defendant the burden of producing an explanation to rebut the prima facie case–i.e., the burden of producing evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason.'" Udo v. Tomes, 54 F.3d 9, 12 (1st Cir. 1995)

(citations omitted). It is important to note that the employer has a burden of production, not of persuasion. See, e.g., Thomas v. Eastman Kodak Co., 183 F.3d at 56.

BBV alleges that Contreras was terminated because of his deteriorating financial situation which, in turn, violated the Bank's policies as outlined in Rules 61 and 62 of BBV' Conduct Manual. BBV has introduced ample evidence, which Contreras does not contest, in support of its allegation that Contreras' financial situation was precarious. The record shows that Contreras was sued by four financial institutions for collection of money during 1993. The record further shows that BBV officials were concerned about Contreras' fiscal woes, given that he was a high-ranking official of the Bank and his conduct was in violation of Bank policies. At the time of his discharge, March of 1995, Contreras' financial situation remained unresolved despite the opportunities given to him by BBV to regulate his finances.

I find that BBV clearly satisfied its limited burden of production by articulating a legitimate, non-discriminatory reason for discharging Contreras: namely, his recurrent and acute financial troubles.

*Pretext for Discrimination*

Once an employer "articulates a legitimate, nondiscriminatory reason for laying off [a] plaintiff, to avoid summary judgment, the plaintiff must introduce sufficient evidence to support two findings: (1) that the employer's articulated reason for laying off the

plaintiff is a pretext and (2) that the true reason is discriminatory. . . . While the plaintiff may rely on the same evidence to prove both pretext and discrimination, the evidence must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by discriminatory animus." Udo v. Tomes, 54 F.3d at 13.

   a. *Pretext*

To prove that BBV's proffered reason for discharging him was merely pretextual, Contreras has brought forth positive job evaluations and letters of commendation regarding his excellent job performance. The fact that Contreras exceeded BBV's expectations in regard to his job performance does not negate the acuteness of his financial problems and the fact that BBV officials repeatedly expressed their concerns about this matter. BBV does not dispute that Contreras was a good employee, but rather assert that the his continued violation of the Bank's rules and policies was problematic given plaintiff's status as a high-ranking officer. The fact that Contreras was given a significant amount of time (from early 1993 until March of 1995) prior to his discharge to settle his financial problems indicates that BBV valued Contreras' contributions as an employee.

In addition, Contreras alleges that BBV's reason is pretextual because BBV's policies and regulations were not applied to other, similarly situated, non-Puerto Rican employees in the same way. See, e.g., Pagano v. Frank, 983 F.2d at 348. In other words, Contreras brings forth comparative evidence of BBV's alleged disparate treatment of non-Puerto Rican

CIVIL 96-1874 (DRD) 16

bank employees. "[I]n offering this comparative evidence, [Contreras] bears the burden of showing that the individuals with whom he seeks to be compared 'have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Rodríguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d at 21 (citing Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)).

Contreras attempts to establish, through deposition testimony and sworn statements[5], that several Spanish employees were in violation of BBV' policies and regulations but received milder punishments than those suffered by him, a Puerto Rican. Among the Spanish employees is Carlos Lamana, who allegedly had a drinking problem, and was involved in a problem with a Venezuelan stockholder along with other Puerto Rican bank employees. Lamana was ultimately transferred to Barcelona, while the Puerto Rican employees were terminated. Another of the employees is José Luis Castellanos who allegedly had problems with the unauthorized use of a corporate credit card, was accused of sexual harassment, and had overdrafts in his checking account. Furthermore, plaintiff contends that Castellanos was involved in some financial irregularities with a meat supplier from Costa Rica and with another Puerto Rican employee. Plaintiff asserts that the Puerto

---

[5] All of the evidence presented by Contreras in regard to the "similarly situated" Spanish employees is contained in either Antonio Pavía's deposition (Docket No. 56, Exhibit F) or in plaintiff's own sworn statement. (Docket No. 56, Exhibit A.)

Rican employee was dismissed while Castellanos was transferred from Puerto Rico. Contreras further presents evidence of yet another Spanish employee, Armando Cadrecha, who supposedly had problems with the unauthorized use of a corporate credit card. Contreras also points to an alleged fraudulent transaction involving a donation to the Interamerican University made by defendant Net. Contreras further alleges that Net had overdrafts in his checking account and delays in his credit card payments.

Looking at the aforementioned in the light most favorable to plaintiff, I find that Contreras has not produce sufficient evidence for a reasonable factfinder to conclude that BBV's cited reason for dismissing Contreras was pretextual. Contreras has failed to establish how the Spanish employees' situations and alleged violations were similar to his own. None of the alleged violations committed by the Spanish employees remotely resemble the financial problems faced by plaintiff Contreras. Furthermore, Contreras has not produced evidence as to the specific actions taken by the Bank in relation to the Spanish employees' behavior or the alleged harsher punishments imposed on the other unnamed Puerto Rican employees.

I find that Contreras has failed to produce evidence sufficient for a reasonable factfinder to find BBV's stated reasons for his dismissal to be pretextual. Absent such evidence, Contreras cannot avert summary judgment. Given that Contreras has failed to

CIVIL 96-1874 (DRD)                        18

marshal enough evidence regarding pretext, it is not necessary to address the question of BBV's alleged discriminatory animus.

*b. Discriminatory Animus*

Plaintiff likewise failed to adduce sufficient evidence to prove BBV's supposed discriminatory intent. Contreras recounts several incidents in his effort to establish BBV's discriminatory animus against Puerto Ricans. Contreras alleges that Mr. Cadrecha, a Spaniard, requested that he and another Puerto Rican employee carry the Bank's flag. (Docket 56, Exhibit A, ¶ 26.) In addition, plaintiff alleges that he was moved from his office during business hours in order to allow Mr. Cabezas to move in. (Docket 56, Exhibit A, ¶ 27.) Contreras further states that he was asked to serve as chauffeur to Mr. Cabezas and had to help him with personal matters, such as assisting him with his daughter's university registration process. (Docket 56, exhibit A, ¶ 28.) Contreras fails to establish how these four incidents, viewed singly or in combination, would allow a rational jury to find that BBV had a hidden, discriminatory agenda against Puerto Ricans.

Contreras also mentions that BBV's non-smoking policies were applied differently to Puerto Rican and Spanish employees. Contreras alleges that Spanish employees received preferential treatment and that Puerto Rican employees were being systematically substituted by Spanish employees. Other than conclusory allegations made by Contreras, the record is void of any proof in support of the alleged differential treatment of Puerto

Rican and Spanish employees and the alleged systematic substitution of the Puerto Rican employees.

Contreras further recounts a couple of unrelated instances in which Spanish employees made derogatory comments about Puerto Rican employees. (Docket 56, Exhibit A, ¶ 40 and 41.) "Sporadic instances of rude behavior, without more, do not compromise competent proof of nationality-based discrimination." Pagano v. Frank, 983 F.3d at 349.

After a careful review of the record I find that Contreras has failed to present significant probative evidence to support a finding that BBV's action of discharging him masked a discriminatory animus based on Contreras' national origin.

## CONCLUSION

I hereby recommend that BBV's motion for summary judgment be GRANTED in its entirety and that plaintiffs claims under Title VII be DISMISSED. Upon review of the facts and the applicable law, I further recommend that the court decline the exercise of supplemental jurisdiction over plaintiffs state law claims. I recommend that the state law claims be DISMISSED without prejudice.

Under the provisions of Rule 510.2, Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.

Failure to comply with this rule precludes further appellate review. See <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985), <u>reh'g denied</u>, 474 U.S. 1111 (1986); <u>Davet v. Maccorone</u>, 973 F.2d 22, 30-31 (1st Cir. 1992); <u>Paterson-Leitch v. Massachusetts Elec.</u>, 840 F.2d 985 (1st Cir. 1988); <u>Borden v. Secretary of Health & Human Servs.</u>, 836 F.2d 4, 6 (1st Cir. 1987); <u>Scott v. Schweiker</u>, 702 F.2d 13, 14 (1st Cir. 1983); <u>United States v. Vega</u>, 678 F.2d 376, 378-79 (1st Cir. 1982); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 22nd day of October, 1999.

*[signature]*

JUSTO ARENAS
United States Magistrate Judge